NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**GEORGE HERRERA,**
*Petitioner,*

v.

**DEPARTMENT OF HOMELAND SECURITY,**
*Respondent.*

---

2012-3101

---

Appeal from the Merit Systems Protection Board in Case No. CB7121110025-V-1.

---

Decided: October 11, 2012

---

GEORGE HERRERA, of Gilbert Arizona, pro se.

CAMERON COHICK, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, and KIRK T. MANHARDT, Assistant Director.

---

Before RADER, *Chief Judge*, LINN and WALLACH, *Circuit Judges.*

PER CURIAM.

## INTRODUCTION

Petitioner George Herrera appeals the final decision of the Merit Systems Protection Board ("Board") in *George Herrera v. Department of Homeland Security*, No. CB-7121-11-0025-V-1 (M.S.P.B. Jan. 20, 2012). In its decision, the Board denied Mr. Herrera's request to review an arbitration decision that dismissed his grievance against the Department of Homeland Security ("Agency"). Because the Board's decision is supported by substantial evidence, we AFFIRM.

## BACKGROUND

Effective March 28, 2011, Mr. Herrera was removed from his position as an immigration enforcement agent with the Agency for lack of candor, failure to report an arrest, and operating a Government-owned vehicle with a suspended driver's license. Subsequently, in a letter dated March 29, 2011, Mr. Herrera's union, the American Federation of Government Employees ("Union"), sought arbitration of Mr. Herrera's removal pursuant to the collective bargaining agreement ("CBA") between the Agency and the Union. Sam Vitaro ("Vitaro" or "Arbitrator") was selected to be the Arbitrator, and Thomas Tierney ("Tierney") represented the Union and Mr. Herrera as the attorney in connection with the arbitration proceedings.

On April 20, 2011, upon receiving notice that Mr. Vitaro had been selected as the arbitrator, Mr Tierney

emailed[1] Mr. Vitaro requesting that Mr. Vitaro recuse himself from the case. The basis for Mr. Tierney's request stems from a fee dispute between Mr. Vitaro and Mr. Tierney in an earlier arbitration proceeding, which did not involve Mr. Herrera. After several email exchanges regarding Mr. Tierney's request for recusal, Mr. Vitaro denied the request.

On May 4, 2011, Mr. Vitaro sought to set a hearing date for the arbitration. Mr. Vitaro offered six dates upon which he was available: May 19; May 20; June 8; June 9; June 15; and June 16. Notwithstanding the proposed dates, Mr. Tierney responded the next day indicating that the CBA required the hearing be held no later than May 11. In response to Mr. Vitaro and Mr. Tierney, James D. Whitaker ("Agency Counsel"), informed the parties of the Agency's unavailability until July.

Thereafter, Mr. Vitaro inquired about available dates in July. Mr. Tierney responded on May 5, 2011 stating, in part:

> Our contract calls for you to hold a hearing within 15 days after selection. Assuming arguendo that 15 days didn't start to run until today, the contract still requires you to hold a hearing before May 26th . . . . If you don't agree to hold a hearing on or before May 26th, then contractually the union don't (sic) have to use you as the arbitrator on this case and will seek to have you removed on that basis.

A55. On May 6, 2011, despite the Agency's representation that it was not available until July, Mr. Vitaro scheduled the hearing for May 26 stating: "I have not

---

[1] Communication among the parties was conducted via email unless stated otherwise.

heard back from Mr. Tierney but on rereading his e-mail to me yesterday, it is clear, as he demanded, that he is available on May 26. Thus, the hearing in the Herrera matter is scheduled for May 26." A55. Mr. Tierney responded on the same day, stating that he had not "demanded" the hearing to be set on May 26 and that the May 26 date is still in violation of the CBA. Mr. Tierney also said that he and Mr. Herrera would not be available on May 26. Further, Mr. Tierney reiterated his contention that Mr. Vitaro should recuse himself from the proceeding. Mr. Vitaro replied, requesting that Mr. Tierney remain professional and stating that Mr. Tierney, despite his intentions to seek recusal, should address the issue of scheduling or otherwise risk prejudicing his client.

On May 9, 2011, Agency Counsel inquired about the proposed May 26 date, to which Mr. Tierney responded: "As previously stated, the union is unavailable on May 26th." A53. Upon receiving Mr. Tierney's email, Agency Counsel replied citing to provisions of Article 48 of the CBA:

> Mr. Tierney has communicated the unavailability for May 26th. He has not offered any other alternative dates but has stated his client does not recognize the arbitrator's jurisdiction to hear this matter. The CBA does not permit the unilateral striking of an arbitrator by either party. The proper procedure is for an arbitrator's jurisdiction to be challenged at the arbitration and then file exception later on if need be. The CBA is clear on its face, the arbitrator has the authority to establish a hearing date or dismiss the grievance . . . . Once again, the agency is ready and willing to arbitrate this matter and is available to dates the arbitrator may have available.

A52.

On May 13, 2011, Mr. Vitaro asked Agency Counsel for available hearing dates, and Agency Counsel indicated that he was available July 7 and July 26-28, 2011. On that same day, Mr. Vitaro informed Mr. Tierney that the hearing date was set for July 7 and that Mr. Tierney was required to respond by May 27 indicating whether he would be attending the hearing. If no response was received, Mr. Vitaro warned Mr. Tierney that the hearing would be canceled and appropriate actions considered, including dismissal of Mr. Herrera's grievance. On May 18, 2011, rather than responding to Mr. Vitaro regarding the July 7 date, Mr. Tierney filed a motion to recuse the arbitrator. On June 16, 2011, the motion to recuse was denied.

Subsequently, Agency Counsel requested that the July 7, 2011 hearing begin at 8 a.m. Mr. Vitaro agreed and asked whether Mr. Tierney was amenable to that time. Mr. Tierney replied stating that he was not available to appear on that date and time.

On June 20, 2011, the Agency moved to dismiss Mr. Herrera's grievance due to the Union's failure to proceed with due diligence in setting a hearing date citing the CBA, in relevant part:

> Each party has the obligation to cooperate promptly with the designated arbitrator in setting a date for a hearing. Failure of either party to proceed with due diligence in responding to an offer of dates may serve as a basis for establishment of a hearing date by the arbitrator or dismissal of the grievance.

A39. On June 22, 2011, the Union President emailed Mr. Vitaro, stating that Mr. Tierney had stepped down as

attorney for the Union and seeking an extension of time to respond to the Agency's motion in order to obtain new counsel. Mr. Vitaro granted the Union's request, extending the deadline to respond to July 29, 2011. The Union failed to respond by July 29, 2011, and on August 2, 2011, Mr. Vitaro granted the Agency's motion to dismiss the grievance for failing to proceed with due diligence in setting a hearing date pursuant to the CBA.

On August 30, 2011, Mr. Herrera, once again represented by Mr. Tierney, filed a request for review of the Arbitrator's decision to the Board. On January 20, 2012, the Board denied the request. A timely request for review was filed with this court. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

As an employee covered by a labor union agreement, Mr. Herrera had the option to either appeal his removal to the Board or to follow the negotiated grievance procedure described in the CBA. 5 U.S.C. § 7121(d). Specifically, § 7121(d) provides:

> An aggrieved employee affected by a prohibited personnel practice under section 2302(b)(1) of this title which also falls under the coverage of the negotiated grievance procedure may raise the matter under a statutory procedure or the negotiated procedure, but not both. An employee shall be deemed to have exercised his option under this subsection to raise the matter under either a statutory procedure or the negotiated procedure at such time as the employee timely initiates an action under the applicable statutory procedure or timely files a grievance in writing, in accordance with the provisions of the parties' negotiated procedure, whichever event occurs first. Selection of

> the negotiated procedure in no manner prejudices the right of an aggrieved employee to request the Merit Systems Protection Board to review the final decision pursuant to section 7702 of this title in the case of any personnel action that could have been appealed to the Board . . . .

Because Mr. Herrera alleges discrimination, a prohibited personnel practice under 5 U.S.C. § 2302(b)(1)[2] in connection with the underlying action, the Board properly exercised jurisdiction to review the arbitration decision under § 7121(d).

In reviewing the Board's decision, we set aside the decision only if it was "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *Whitmore v. Dep't of Labor*, 680 F.3d 1353, 1366 (Fed. Cir. 2012). "Under the substantial evidence standard of review, a court will not overturn an agency decision if it is supported by 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Jacobs v. Dep't of Justice*, 35 F.3d 1543, 1546 (Fed. Cir. 1994) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

---

[2]  5. U.S.C. 2302(b)(1) states, in relevant part: "Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority – (1) discriminate for or against any employee or applicant for employment – (A) on the basis of race, color, religion, sex, or national origin, as prohibited under section 717 of the Civil Rights Act of 1964 . . . ."  Here, Mr. Herrera alleges discrimination on the basis of race and ethnicity. *See* A3.

The Board's standard of review of an arbitration decision is narrow; such decisions are entitled to a greater degree of deference than initial decisions of the Board's administrative judges. *Keller v. Dep't of Army*, 113 M.S.P.R. 557, 559 (2010). Even if the Board disagrees with the arbitrator's decision, absent legal error, the Board cannot substitute its conclusions for those of the arbitrator. *Id.* The Board will modify or set aside an arbitrator's decision only where the arbitrator has erred as a matter of law in interpreting civil service law, rule, or regulation. *Id.*

Here, the Board's decision affirming the Arbitrator's dismissal of Mr. Herrera's grievance against the Agency was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Rather, substantial evidence supports the Board's decision. The Board rejected Mr. Herrera's contention that the Arbitrator violated his due process rights by denying him a hearing and finding that the Arbitrator acted properly within his discretion and within the bounds of the CBA. This determination is fully supported by substantial evidence. Indeed, the record shows that the Arbitrator made numerous attempts to schedule a hearing despite Mr. Tierney's refusal to confirm proposed hearing dates or propose alternative hearing dates. The Arbitrator eventually scheduled a hearing date and warned Mr. Tierney of the consequence for any failure to appear. Mr. Tierney did not respond to the Arbitrator regarding the scheduled hearing date. As a result, the hearing was cancelled and the Agency filed a motion to dismiss Mr. Herrera's grievance for failure to proceed with due diligence pursuant to the CBA.

The Union subsequently informed the Arbitrator that Mr. Tierney was removed from the case and requested an extension of time to find new counsel. Although the

Arbitrator granted the Union's request, the Union failed to find new counsel and ultimately failed to respond to the motion. These facts render reasonable the Arbitrator's decision to grant the motion to dismiss. As a result, we agree with the Board's decision that Mr. Herrera did not show that the Arbitrator "abused his discretion and thereby erred as a matter of law in handling the arbitration proceedings," and find that the decision to dismiss the grievance is supported by substantial evidence.

Next, Mr. Herrera contends that the Arbitrator was biased, as evidenced by the Arbitrator's comments that Mr. Tierney was unethical and "a joke." Mr. Herrera's arguments regarding bias is not supported by the record and fails to unsettle the evidence that substantially supports the Board's decision. The Board found Mr. Herrera's argument unpersuasive because these comments were made to Mr. Tierney in the context of a billing dispute in another arbitration matter involving another grievant. In particular, the Board did not err because comments alone generally do not constitute bias as a matter of law, and Mr. Herrera fails to show how alleged unprofessional comments from a prior proceeding in an unrelated matter constitute bias in this case on appeal. *See Liteky v. United States*, 510 U.S. 540, 555-56 (1994) ("*Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display."); *see also Bieber v. Dep't of Army*, 287 F.3d 1358, 1362 (Fed. Cir. 2002) (quoting *Liteky*, 510 U.S. at 555) (requiring a showing of "a deep-seated favoritism or antagonism that would make fair judgment impossible"). Accordingly, applying our deferential standard of review, we see no error in the Board's

denial to review the Arbitrator's decision dismissing Mr. Herrera's grievance.

## AFFIRMED

No costs.