NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SHERRY MOORE,**
*Petitioner*

**v.**

**DEPARTMENT OF HOMELAND SECURITY,**
*Respondent*

---

2018-1985

---

Petition for review of an arbitrator's decision by John M. Donoghue.

---

Decided: July 9, 2019

---

SHERRY MOORE, Stratford, NJ, pro se.

DOUGLAS GLENN EDELSCHICK, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by JOSEPH H. HUNT, ROBERT EDWARD KIRSCHMAN, JR., FRANKLIN E. WHITE, JR.; PATRICK DYSON, Office of the Chief Counsel, Immigration and Customs Enforcement, United States Department of Homeland Security, Los Angeles, CA.

---

Before LOURIE, O'MALLEY, and WALLACH, *Circuit Judges.*

PER CURIAM.

Petitioner Sherry Moore appeals an arbitration decision, which upheld the Department of Homeland Security's ("DHS") removal of Ms. Moore from her position as a Deportation Officer with U.S. Immigration and Customs Enforcement ("ICE"). Resp't's Appx. 9; *see* Resp't's Appx. 2–10 (Arbitrator Decision).[1] We have jurisdiction pursuant to 5 U.S.C. §§ 7121(f) and 7703(b)(1). We affirm.

## BACKGROUND

From 1997 through 2016, Ms. Moore held various law enforcement positions at DHS. Resp't's Appx. 13. In 2007 and 2008, Ms. Moore was serving as an Immigration Enforcement Agent ("IEA") when DHS initiated two fact-finding inquiries into whether she had failed to follow agency travel procedures on nine separate occasions, *see* Resp't's Appx. 61–66 (Inquiry Results on Travel Procedures), and whether she had failed to pay her Government-issued credit card, *see* Resp't's Appx. 32–34 (Inquiry Results on Credit Card). Following the two inquiries, DHS determined that Ms. Moore failed to follow agency travel procedures, *see* Resp't's Appx. 62–66, and failed to pay her Government-issued credit card, *see* Resp't's Appx. 32–34. In 2009, DHS commenced a third fact-finding inquiry to determine whether Ms. Moore complied with agency procedures when she provided her firearm to someone who was not employed by the agency, *see* Resp't's Appx. 144–47 (Inquiry Results on Firearm).

---

[1]    Resp't's Appx. refers to the Department of Homeland Security's Supplemental Appendix attached to its response brief.

During the three investigations, DHS documented what they described as a "lack of candor" on two separate occasions. First, in June 2008, DHS asked Ms. Moore under oath "[w]hy is it that you failed to follow policy and procedure relative to authorizations and vouchers incident to official travel." Resp't's Appx. 91. Ms. Moore responded that "management . . . here had never shown [her] that it was ever important," and "[t]hey never said a word about it until [she] was served [with] the [performance work plan]." Resp't's Appx. 91. Second, in February 2008, Ms. Moore told her supervisor that she paid her Government-issued credit card, *see* Resp't's Appx. 54, when the credit card balance remained unpaid through March 12, 2008, *see* Resp't's Appx. 41 (Credit Card Balance). From June 13, 2008 through August 18, 2014, Ms. Moore was out of the office due to a work-related injury. Resp't's Appx. 2. Upon her return to work, Ms. Moore served as a Deportation Officer. In October 2015, DHS notified Ms. Moore of her proposed removal explaining that the "lack of candor" issue was "extremely serious." Resp't's Appx. 27.

In April 2016, DHS removed Ms. Moore from her position as a Deportation Officer. Resp't's Appx. 11–18. DHS notified Ms. Moore that she "ha[d] the right to contest [the Agency Removal Decision]" with either the Merit Systems Protection Board ("MSPB") or an arbitrator, Resp't's Appx. 14–15, which Ms. Moore did. In December 2017, an arbitrator heard testimony from six witnesses and reviewed documents admitted into evidence of the alleged misconduct. Resp't's Appx. 1 (Certified List of Exhibits), 215–415 (Hearing Transcript). In March 2018, after the Hearing on the matter, the Arbitrator issued its arbitrator decision denying Ms. Moore's grievance and sustaining her removal from DHS. Resp't's Appx. 2–10. In the Arbitrator Decision, the Arbitrator explained, inter alia, that "the essence of a law enforcement officer's duty is veracity" and "[t]he Agency's loss of faith in Ms. Moore's ability to perform the essential elements of her job is not misplaced" because Ms.

Moore "was untruthful when she [said] . . . that she had never been told that it was important that she follow travel procedures" and when she said "she had paid her government issued credit card." Resp't's Appx. 8–9. In July 2018, Ms. Moore appealed the Arbitrator Decision.

## DISCUSSION

We apply the same substantive standards of review to arbitration decisions as to the MSPB decisions. 5 U.S.C. § 7121(f); *see Appleberry v. Dep't of Homeland Sec.*, 793 F.3d 1291, 1295 (Fed. Cir. 2015). We must affirm the arbitrator's decision unless it is: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c).

On appeal, Ms. Moore primarily asserts that her termination for "lack of candor" was improper. Pet'r's Br. 19. Specifically, Ms. Moore asserts that the Arbitrator's decision to uphold DHS's "termination [decision] is due to the Lack of Candor claim" because her removal "could not be upheld on the basis of the travel voucher, credit card, and firearms issues." Pet'r's Br. 26.[2] We disagree.

---

[2] Ms. Moore argues she was removed for three minor offenses that she had "accepted responsibility" for, Pet'r's Br. 7–19, 27, and "[were] fully resolved in 2008," *id.* at 15.

Preliminarily, Ms. Moore asserts that DHS violated the law by sustaining lack of candor charges not previously referred to DHS's Joint Intake Center ("JIC") for inquiry. Pet'r's Br. 19. Nothing requires an agency to refer misconduct allegations to the JIC prior to initiating an adverse action pursuant to disciplinary actions. Resp't's Appx. 420–23 (explaining, in the Collective Bargaining Agreement, the procedures for disciplinary and adverse

The Arbitrator properly considered the *Douglas* factors when evaluating Ms. Moore's case. Ms. Moore asserts that "the *Douglas* factors were not properly assessed and removal of a seasoned federal employee . . . did not promote the efficiency of the service." Pet'r's Br. 25 (capitalization modified); *see Douglas v. Veterans Admin.*, 5 M.S.P.R. 280, 305–06 (1981) (articulating the *Douglas* factors that are used by agencies "when deciding what penalty is appropriate, including not only the gravity of the offense but such other matters as mitigating circumstances");[3] Resp't's Appx. 19–24 (*Douglas* factors review form). Ms. Moore also asserts that DHS's "last[-]chance settlement agreement," providing for a ten-day suspension, was "illegal and amounted to extortion." Pet'r's Br. 23 (capitalization modified). As we have explained, "[d]isparate treatment is not shown by comparing a penalty imposed by an agency with one emanating from a settlement agreement." *Dick v. U.S. Postal Serv.*, 975 F.2d 869 (Fed. Cir. 1992) (Table). Thus,

---

actions for American Federation of Government Employees, AFL-CIO). Nevertheless, the JIC-referred inquiries into Ms. Moore's conduct documented her false statements in February and June 2008, which DHS used to bring lack of candor charges. Resp't's Appx. 32–34, 61–66, 140–41 (Inquiry Results Regarding Government Issued Credit Card). *See O'Hara v. Dep't of Homeland Sec.*, 612 F. App'x 593, 595–96 (Fed. Cir. 2015) (sustaining removal for lack of candor where mitigating factors exist).

[3] In *Douglas*, the MSPB recognized twelve non-exhaustive "factors that are relevant for [agency] consideration in determining the appropriateness of a penalty." 5 M.S.P.R. at 305–06. The MSPB recognized that "[n]ot all of these factors will be pertinent in every case." *Id.* at 306*; see Kumferman v. Dep't of Navy*, 785 F.2d 286, 291 (Fed. Cir. 1986) ("It is not reversible error if the [MSPB or arbitrator] fails expressly to discuss all of the *Douglas* factors." (citation omitted)).

the Board did not act arbitrarily or capriciously in refusing to use last-chance settlement agreements as comparators.

Additionally, the Arbitrator's affirmance of DHS's removal of Ms. Moore was not arbitrary or capricious. Although removal is a severe penalty, it is within the Arbitrator's discretion so long as the decision "reflects a reasoned concern for the factors appropriate to evaluating a penalty." *Kumferman*, 785 F.2d at 291–92. This is precisely the situation here. The DHS identified Ms. Moore's mitigating factors, including that she spent "nearly nineteen (19) years with the Agency," that her work "has been at an acceptable level," and that she had a variety of personal issues, such as "the difficult situation that [her] house had burned down a year prior to the majority of the misconduct, [her] health," and her "financial issues." Resp't's Appx. 13. The DHS weighed against the mitigating factors the aggravating factors such as, inter alia, the failure "to return [her] firearm to the firearms instructor and instead giv[ing] [her] firearm to a private citizen," and the "effect a demotion/suspension would have on th[e] office as a whole." Resp't's Appx. 13–14; *see Douglas*, 5 M.S.P.R. at 305 (explaining that "the employee's past disciplinary record" may be considered).

In making his decision, the Arbitrator considered that the Field Office Director of DHS had explained that he "thought long and hard as to whether there was a way to salvage" her career and "would have preferred using progressive discipline to try to correct the conduct in question," but that "[a] suspension or demotion would send the wrong message [and that o]ther officers in th[e] office would believe that it is okay to cover up or lie about a mistake." Resp't's Appx. 14. Considering all of these mitigating factors along with the seriousness of the offense, the Arbitrator agreed with the Field Office Director and determined that DHS "needs to rely on all reports it receives from its [Deportation Officers]" and "[i]t must have confidence that what it is told is true," which it no longer has. Respt's

Appx. 9; *see* Resp't's Appx. 14 (explaining, by the Field Officer, that "[t]he seriousness of the offense, impact on [Ms. Moore's] ability to perform [her] full range of duties[,] and lack of rehabilitative potential diminishes the effectiveness of a length suspension serving as a viable alternative sanction"). The Arbitrator concluded that "[i]t must be found that in this case just cause [for removal] has been established" after reviewing the *Douglas* factors that "[m]anagement has relied on." Resp't's Appx. 7; *see* Resp't's Appx. 14 (explaining, by management, that "after carefully balancing all of the *Douglas* Factors," Ms. Moore's "removal is warranted," "reasonable," and "promotes the efficiency of the service" where "a lesser penalty . . . would not meet the needs of the Agency"). The Arbitrator showed a reasoned concern for applying the *Douglas* factors appropriately and carefully weighed these considerations before determining that removal was appropriate.[4]

DHS's removal of Ms. Moore based on two lack of candor charges is supported by substantial evidence because the record contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Wrocklage v. Dep't of Homeland Sec.*, 769 F.3d 1363, 1366 (Fed. Cir. 2014). Removal for lack of candor "is a broad[] and . . . flexible concept whose contours and elements depend upon the particular context and conduct involved." *Ludlum v. Dep't of Justice*, 278 F.3d 1280, 1284 (Fed. Cir. 2002). As Ms. Moore recognizes, the ICE Table of Offenses

---

[4] While Ms. Moore asserts that she was disciplined in 2015 for her lack of candor in 2008, *see* Pet'r's Br. 26–27, she was on medical leave from June 13, 2008 through August 18, 2014 and, therefore, DHS could not complete a factual inquiry to take disciplinary actions, *see* Resp't's Appx 2. DHS, however, still took the delay into account as a mitigating factor. Resp't's Appx. 23 (*Douglas* Factor Review Form).

and Penalties states that "displaying lack of candor in any official inquiry or proceeding" warrants "[w]ritten reprimand to removal" at the "first offense." Resp't's Appx. 175; *see* Pet'r's Br. 21 (acknowledging that "Lack of Candor is a charge that can result in removal for a first time offense").[5]

In making the decision that removal is warranted and reasonable, and "promotes the efficiency of the service," Resp't's Appx. 9, the Arbitrator considered the facts, Article 29 of the Master Agreement, the *Douglas* factors, and the Agency Removal Decision, Resp't's Appx. 2–9, which considered "all of the evidence of record, including the letter of proposal supporting [Ms. Moore's] documentation, [her] written reply, [her] oral reply, the letter notifying [her] of additional material to be relied upon and [her] response to that letter," Resp't's Appx. 12. Moreover, substantial evidence supports the Arbitrator's finding that Ms. Moore lacked candor when she stated that she paid off her credit card bill. In March 2008, Ms. Moore's supervisor submitted a memorandum stating that "[Ms.] Moore told [him] that she paid her credit card bill over the phone that same date [that he spoke with her] and that her account was now 'okay.'" Resp't's Appx. 201; *see* Resp't's Appx. 199 (stating, in 2016 by Ms. Moore's former supervisor, that he "ha[s] never stated that [the 2008 memorandum] was false nor led [anyone] to believe that it was" and that his 2008 memorandum was accurate). Additionally, Ms. Moore's supervisor testified at the Hearing that there were two responses from Ms. Moore, "[o]ne" was that "[the bill] was taken care" of, and "[t]he other one was that . . . she was addressing it." Resp't's Appx. 261. The supervisor, therefore, clarified that

---

[5] The "ICE Table of Offenses and Penalties," is a "guide to offenses and penalties . . . [and provides] assistance in assessing the appropriate penalty in disciplinary and adverse actions." Resp't's Appx. 164; *see* Resp't's Appx. 164–94 (ICE Table of Offenses and Penalties).

it was in follow up conversations with Ms. Moore in March and April 2008 when she said "[i]ts going to be taken care of." Resp't's Appx. 260–61; *see* Resp't's Appx. 58 (explaining, in a memorandum dated April 18, 2008, that Ms. Moore said she "would . . . pay her card"), 60 (explaining, in a memorandum dated April 24, 2008, a conversation documenting that Ms. Moore "told Citibank to withdraw the amount owed automatically on Monday, April 21, 2008"). Because Ms. Moore told her supervisors the bill was paid in Mach 2008, but then said that it would be paid in April 2008, the Arbitrator properly determined that there was a lack of candor about this charge.

Substantial evidence also supports the Arbitrator's decision that Ms. Moore lacked candor when she stated that management did not stress the importance of doing travel vouchers in a certain time frame. Ms. Moore admitted that "[i]t would seem that" she had discussions with management about "needing to timely submit the[] [travel] vouchers" in December 2006 and February 2007. Resp't's Appx. 396–97. However, Ms. Moore admitted at the Hearing that it was "more than likely" that she received a memorandum dated December 22, 2006 from her field office director with the subject "travel vouchers and prompt payment of government credit card." Resp't's Appx. 395. Ms. Moore also acknowledged at the Hearing that the memo went out to "the entire staff" for her field office and that it discussed "the importance . . . [of] having your travel voucher and government cards paid promptly." Resp't's Appx. 395. Accordingly, substantial evidence supports the Arbitrator's affirmance for lack of candor. Thus, the Arbitrator's decision to remove Ms. Moore as a result for lack of candor was supported by substantial evidence and is not arbitrary or capricious.[6]

---

[6] While Ms. Moore asserts that "the [A]rbitrator was not impartial and should have recused himself" because,

CONCLUSION

We have considered Ms. Moore's remaining arguments and find them unpersuasive. The Arbitrator Decision is

**AFFIRMED**

---

inter alia, he had a "terrible relationship" with her union attorney, Pet'r's Br. 3–7, we rejected a similar argument in *Herra v. Department of Homeland Security* concerning the same attorney, Thomas Tierney, who represented Ms. Moore. 498 F. App'x 35, 36–38, 40 (Fed. Cir. 2012). In *Herra*, Mr. Tierney "contend[ed] that the [a]rbitrator was biased, as evidenced by the [a]rbitrator's comments that Mr. Tierney was unethical." *Id*. at 40. Here, there is no objective evidence that the Arbitrator demonstrated any bias towards Ms. Moore. To the contrary, the Arbitrator indicated that he decided against leniency because "Ms. Moore is a sworn law enforcement officer and held to a higher standard." Resp't's Appx. 6; *see* Respt's Appx. 13 (explaining by the Field Officer Director that he decided against considering Ms. Moore's "one-day suspension for Conduct Unbecoming a Law Enforcement Officer" because the "suspension occurred a long time ago"). The Arbitrator showed no indication that his alleged "terrible relationship" with Ms. Moore's attorney warranted recusal.