# United States Court of Appeals for the Federal Circuit

---

**CATHY APPLEBERRY,**

*Petitioner*

**v.**

**DEPARTMENT OF HOMELAND SECURITY,**

*Respondent*

---

2014-3123

---

Petition for review of an arbitrator's decision by Dennis Nolan.

---

Decided: July 8, 2015

---

DAVID R. SCHLEICHER, Schleicher Law Firm, PLLC, Waco, TX, argued for petitioner.

K. ELIZABETH WITWER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by JOYCE R. BRANDA, ROBERT E. KIRSCHMAN, JR., SCOTT D. AUSTIN.

---

Before MOORE, WALLACH, and TARANTO, *Circuit Judges.*

TARANTO, *Circuit Judge.*

Cathy Appleberry worked for the U.S. Citizenship and Immigration Services, an agency within the Department of Homeland Security, and was covered by a collective bargaining agreement. Deeming her performance unsatisfactory, the agency placed her on a "performance improvement plan" and then found that she failed to improve. Eventually, relying on that failure, the Department fired her.

When Ms. Appleberry brought her removal to arbitration, as authorized (but not required) by the collective bargaining agreement, the arbitrator concluded that she could not challenge the key bases for the removal, *i.e.*, the agency determinations that she should be placed on the performance-improvement plan and that she failed under the plan. He concluded that the collective bargaining agreement, pursuant to 5 U.S.C. § 7121, prescribed the exclusive process, including time limits, for challenging those determinations, but that Ms. Appleberry had abandoned that process after initiating it through filing grievances, allowing the time for completing the challenges to run. The arbitrator thus barred reconsideration of "issues that were raised in [her] earlier grievances, or that could have been raised but were not." J.A. 9. In this court, Ms. Appleberry accepts that, if that rationale was correct, the removal was properly upheld.

Ms. Appleberry appeals on the ground that the arbitrator should not have barred consideration of the performance-improvement-plan issues raised in her earlier, uncompleted grievances. We conclude that the arbitrator properly enforced the grievance process designated as "exclusive" in the collective bargaining agreement. Accordingly, we affirm.

BACKGROUND

Ms. Appleberry worked as an Immigration Services Officer. The Department had a collective bargaining agreement (Agreement) with the American Federation of Government Employees pursuant to 5 U.S.C. ch. 71. The Agreement refers to an "Employee Performance Plan and Appraisal Form" (PPA) for evaluating employee performance, established by the Department under 5 U.S.C. § 4302 ("Establishment of performance appraisal systems"). *See* 5 C.F.R. §§ 430.201–430.210 (appraisal and rating regulations); J.A. 54–65 (PPA); J.A. 135–41 (Agreement Article 22, "Performance Management").

The PPA delineates areas of "core competency," such as "communication" and "customer service," as well as the standards that must be met to "[a]chieve[] [e]xpectations" or "[a]chieve[] [e]xcellence" in these areas. J.A. 55–56. It also sets out "*critical* [p]erformance [g]oals," such as "National Security/Fraud Detection," and lays out detailed standards. J.A. 57–59. The PPA directs the Department to rate an employee based on various competencies and goals, weight the ratings, and combine them to determine the employee's overall performance rating for any given period. J.A. 55, 57. Unacceptable performance under the PPA may lead to a reduction in grade or removal, pursuant to 5 U.S.C. § 4303.

Ms. Appleberry's performance rating for 2012 was lackluster. Consequently, on December 6, 2012, the Department issued a written "Performance Improvement Plan" (PIP). JA 39–45; *see also* J.A. 142 (Agreement Article 30(B), "Performance Improvement Plan"); 5 C.F.R. § 432.104 ("Addressing unacceptable performance"). It identified critical elements of the PPA for which Ms. Appleberry was "performing unacceptably," explained what she had to do to make her performance acceptable, and gave her 90 days to improve. J.A. 39–45; *see also* 5 U.S.C. § 4301 ("Definitions"); 5 C.F.R. § 430.203 (same).

It also warned her that, if she did not "maintain acceptable performance in [her] core competencies and performance goals for one (1) year from the beginning of the PIP period," she might be subjected to "reduction in grade or removal without any further opportunity to demonstrate acceptable performance." J.A. 45.

On May 23, 2013, the Department issued a PIP "closeout letter" informing Ms. Appleberry that she had performed unacceptably and therefore had failed the PIP standards. J.A. 46–54. The next month, on June 27, 2013, the Department proposed her removal, essentially (as Ms. Appleberry here accepts) for failing the PIP standards. J.A. 305–07. The Department removed Ms. Appleberry four months later, on October 31, 2013. J.A. 33–38.

Before the removal decision, Ms. Appleberry had filed several grievances under the collective bargaining agreement's negotiated procedure. The Agreement's definition of a "grievance" includes "a complaint . . . by a unit employee concerning his or her conditions of employment." J.A. 20 (Article 38(B), "Definition"). The procedure it sets out for resolving grievances includes several stages, with time limits applicable at each stage. The Agreement states that, with exceptions neither invoked nor relevant here (including where the employee has made an appeal of an adverse action to the Merit Systems Protection Board), "[t]his negotiated procedure shall be the exclusive procedure available to the Union and employees in the unit for resolving grievances which come within its coverage . . . ." J.A. 20 (Article 38(A), "Purpose").

The negotiated procedure begins with the Department's consideration of the merits of a grievance, moves through increasingly formal steps, and culminates in arbitration—if the employee meets prescribed filing deadlines. Specifically, the employee must first file either a "Step I" or "Step II" grievance within 35 days of the

complained-of incident. If the employee chooses to file at Step I instead of immediately starting at Step II, and the Step I grievance is denied, the employee must file a Step-II grievance within 14 days of receiving the Step I decision. No matter how the employee gets to Step II, if the Step II grievance is denied, the employee has 15 days from receiving the denial to file a Step III grievance. Arbitration may be invoked only after a Step III decision, and only by meeting a 30-day deadline.

Ms. Appleberry had filed three sets of grievances under that procedure. The first challenged her 2012 PPA rating, arguing that it was based on performance standards that violated 5 U.S.C. § 4302(b)(1). The second claimed workplace bullying, including allegations that the Department had improperly reviewed her work under the PIP. *E.g.*, J.A. 325. The third challenged the PIP closeout letter, claiming, among other things, that the PIP was neither established nor conducted in accordance with the negotiated PPA standards and that Ms. Appleberry's performance "met expectations." *E.g.*, J.A. 364. All three sets of grievances were filed at the Step I, II, and III levels, and all three were denied at each level. As is undisputed, Ms. Appleberry failed to invoke arbitration for any of the grievances within the permitted 30-day period. The deadline to invoke arbitration of her PPA-rating grievance fell before the Department proposed her removal; the deadlines for her bullying and PIP-closeout-letter grievances fell after her removal was proposed but before the removal decision was actually made. Ms. Appleberry timely opposed the proposed removal on July 8, 2013.

After her removal, Ms. Appleberry filed for an expedited arbitration of the removal decision, as provided for by the Agreement's Article 39(K). Before considering Ms. Appleberry's challenge, the arbitrator granted the Department's motion to bar consideration of the issues that she raised or could have raised in her earlier grievances

but failed to request be arbitrated. Shortly thereafter, the arbitrator denied her removal grievance.

Ms. Appleberry appeals. She rests her appeal entirely on the contention that the arbitrator erroneously excluded issues relating to her failure of the PIP that she raised in her earlier grievances but did not take to arbitration. We have jurisdiction pursuant to 5 U.S.C. §§ 7121(f) and 7703(b)(1).

DISCUSSION

"We review an arbitrator's decision under the same standard of review that is applied to decisions from the Merit Systems Protection Board." *Johnson v. Dep't of Veterans Affairs*, 625 F.3d 1373, 1376 (Fed. Cir. 2010) (citing 5 U.S.C. § 7121(f)). Thus, "we must affirm the decision of the arbitrator unless it is: '(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence.'" *Id.* (quoting 5 U.S.C. § 7703(c)). This standard of review "contemplates de novo review of questions of law." *Id.* (quotation marks and citations omitted). "Interpretation of a collective-bargaining agreement is a question of law we review de novo." *Garcia v. Dep't of Homeland Sec.*, 780 F.3d 1145, 1147 (Fed. Cir. 2015); *see Giove v. Dep't of Transp.*, 230 F.3d 1333, 1340–41 (Fed. Cir. 2000); *Huey v. Dep't of Health & Human Servs.*, 782 F.2d 1575, 1577–78 (Fed. Cir. 1986).

The basis for Ms. Appleberry's removal was her failure to improve adequately under the PIP. It is undisputed that Ms. Appleberry initiated but did not complete the Agreement-prescribed process for challenging the determination of her PIP failure: she did not take the matter to arbitration, much less do so within the time allowed. The question presented is whether, as the arbitrator concluded, the terms of the specific collective bargaining agree-

ment here precluded him, in evaluating the removal decision, from considering the PIP-failure issues raised in Ms. Appleberry's earlier grievances but not timely submitted to arbitration.

We conclude that the arbitrator correctly determined that he was precluded. The government indicated at oral argument that, had Ms. Appleberry opted (as she was entitled to do) to appeal the removal decision to the Merit Systems Protection Board instead of challenging the removal before an arbitrator, the Board, unlike the arbitrator, would not have been precluded from considering the PIP-related issues raised in Ms. Appleberry's prior grievances. Oral Argument at 15:00–15:38; *see also* 5 U.S.C. § 7121(e)(1). Under that position, that particular difference between forums, among others, would be one that employees in Ms. Appleberry's position might well consider in making a choice of forum for a removal decision. But Ms. Appleberry chose the arbitral forum, and the contract providing for arbitration circumscribed the arbitrator's authority. Specifically, the Agreement prohibited his review of the PIP-related actions in the removal arbitration—those actions had to be challenged according to the process that the Agreement said was exclusive, and Ms. Appleberry did not bring that process to completion.

Article 38(A) of the Agreement states that, aside from certain exceptions neither argued nor applicable here, the "negotiated procedure shall be the *exclusive* procedure available . . . for resolving grievances which come within its coverage." J.A. 20 (emphasis added). There is no dispute that the PIP actions were the proper subject of a "grievance," under Article 38(B); indeed, Ms. Appleberry did bring those actions into the grievance process—though she did not complete that process. Article 38(F), which lays out the grievance framework, includes a provision permitting arbitration in accordance with Article 39 should "the employee [be] dissatisfied with the Step III

decision." J.A. 25. Article 39(B) provides that, "[i]f the Agency and the Union fail to settle any grievance processed under the grievance procedures, such grievance, upon written request by the Union or the Agency, may be submitted to arbitration within (30) calendar days from the date the Agency or the Union's final decision is received." J.A. 27. This is a timing requirement, generally implying that the invocation of arbitration may not occur outside the 30-day period, and Ms. Appleberry has not presented to us any argument for relaxing the requirement in this case. And Article 38(I) declares that a grievance, once brought, if not timely moved forward to the next stage, "shall be deemed to have been withdrawn." J.A. 26. Finally, and critically, we have been pointed to no basis on which, short of the government's consent, the arbitrator could deviate from this prescribed procedure: Article 39(O) states that "[t]he arbitrator shall be bound by the terms of this Agreement and shall have no authority to add to, subtract from, alter, amend or modify any provision of this Agreement." J.A. 31. Together, those provisions establish the exclusivity of the Agreement's prescribed process for an arbitrator's review of the merits of a covered employer action.

The Civil Service Reform Act is not to the contrary. Indeed, the Act's definition of a "grievance" includes "any complaint . . . by any employee concerning any matter relating to the employment of the employee . . . [or] any claimed violation, misinterpretation, or misapplication of any law, rule, or regulation affecting conditions of employment." 5 U.S.C. § 7103(a)(9)(A), (a)(9)(C)(ii). And the Act declares that, subject to exceptions inapplicable here, "any collective bargaining agreement shall provide procedures for the settlement of grievances . . . [and] the procedures shall be the *exclusive* administrative procedures for resolving grievances which fall within [the collective bargaining agreement's] coverage." § 7121(a)(1) (emphasis added).

Ms. Appleberry contends that the limitation on arbitral consideration here is contrary to *Cornelius v. Nutt*, in which the Supreme Court ruled that "[i]f the employee elects . . . to proceed [with a negotiated grievance procedure instead of an appeal to the Board], and the union or the agency invokes binding arbitration, . . . the arbitrator is to apply the same substantive standards that the Board would apply if the matter had been appealed."  472 U.S. 648, 652 (1985) (citation omitted).  We do not find *Cornelius* to be applicable—even though performance-related evaluations are relevant to the Board's review of whether a removal for unacceptable performance is proper, *see, e.g.,* 5 U.S.C. § 4302(b); *Lovshin v. Dep't of Navy,* 767 F.2d 826, 834 (Fed. Cir. 1985) (en banc), and even though the government has acknowledged that Ms. Appleberry could have had the PIP actions reviewed by the Board had she challenged her removal in that forum.  The arbitrator here did not alter applicable "substantive standards," *Cornelius,* 472 U.S. at 652, but rather adhered to procedural requirements clearly stated in the collective bargaining agreement.  As we have had occasion to explain, *Cornelius* requires that arbitrators "adhere to the board's interpretation of . . . substantive rules," such as "the standard of review for substantial evidence and the harmful error rule."  *Wissman v. Soc. Sec. Admin.,* 848 F.2d 176, 178 (Fed. Cir. 1988).  But "[t]he only procedures [the] arbitrator must follow are those specified in the collective bargaining agreement, in the submission of the parties to the arbitrator, or required by statute."  *Id.*

Indeed, the statutory provision relied on in *Cornelius,* 5 U.S.C. § 7121(e)(2)—which directs arbitrators to apply the standards in 5 U.S.C. § 7701(c)(1) governing Board review—contains limiting language that forecloses using it to circumvent the Agreement's  "exclusive" procedure here.  Section 7121(e)(2) applies only to "matters covered under sections 4303 and 7512 . . . *which have been raised under the negotiated grievance procedure.*"  5 U.S.C.

§ 7121(e)(2) (emphasis added). In *Cornelius*, the grievant was raising a matter through the prescribed grievance procedure, and there was no question about failure to meet procedural requirements for presenting that matter; the question was what standard governed the assessment of that matter. In this case, however, the arbitrator's decision rests on the determination that the basis for removal, PIP failure, was not properly "raised under the negotiated grievance procedure" in the first place. Procedures differ between arbitration and Board review, and § 7121(e) gives an employee a choice between them for a matter under both the Board's jurisdiction and the arbitrator's contractual authority. *See Cornelius*, 472 U.S. at 650, 652; *Atanus v. Merit Sys. Prot. Bd.*, 434 F.3d 1324, 1326–27 (Fed. Cir. 2006). It does not expand the arbitrator's authority to decide issues beyond the authority provided in the contract.

In following the procedural requirements of the Agreement, the arbitrator, consistent with *Cornelius*, applied the same substantive standards as applied by the Board. The arbitrator's reason for limiting consideration of certain issues had everything to do with the process required by the agreement. As Ms. Appleberry has pointed to no statutory provision, in Chapter 43 or otherwise, preventing the adoption of this contracted-for process, we conclude that the arbitrator did not err. *See Wissman*, 848 F.2d at 178; *cf. 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 257–60 (2009).

CONCLUSION

For the foregoing reasons, the judgment of the arbitrator is affirmed.

No costs.

**AFFIRMED**