## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| ROBERT M. CLEDERA,<br>　　　　　Appellant, | DOCKET NUMBER<br>DA-0752-21-0013-I-3 |
| v. | |
| DEPARTMENT OF JUSTICE,<br>　　　　　Agency. | DATE: March 25, 2024 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Ariel Solomon</u>, Esquire, Washington, D.C., for the appellant.

<u>Zachary Bock</u>, Esquire, Falls Church, Virginia, for the agency.

**BEFORE**

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

**FINAL ORDER**

¶1　　　The appellant has filed a petition for review of the initial decision, which sustained his removal. For the reasons discussed below, we GRANT the appellant's petition for review and REVERSE the initial decision.[2]

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

[2] The administrative judge found that the appellant failed to prove his affirmative defenses of discrimination based on a perceived mental disability, reprisal for equal employment opportunity activity, whistleblower reprisal, harmful procedural error, and several due process violations. *Cledera v. Department of Justice*, MSPB Docket No. DA-0752-21-0013-I-3, Appeal File, Tab 39, Initial Decision. Except for the due

## BACKGROUND

¶2        On September 10, 2020, the agency removed the appellant from his position as a Legal Assistant at the Dallas Immigration Court, within the agency's Executive Office of Immigration Review (EOIR), based on charges of failure to follow instructions (four specifications) and inappropriate conduct (one specification). *Cledera v. Department of Justice*, MSPB Docket No. DA-0752-21-0013-I-3, Appeal File (I-3 AF), Tab 12 at 21-25.  The charges concerned the appellant's incessant demands that the Federal Protective Service (FPS) aid him in investigating an incident on May 13, 2020, when he was allegedly almost hit by two vehicles while crossing a crosswalk in front of the Earl Cabell Federal Building (ECFB) where he worked.  I-3 AF, Tab 11 at 6-7, Tab 12 at 22-23.  In his decision letter, the deciding official stated that the appellant's continued misconduct presented an increasingly disturbing pattern of disrespect for authority and the health and safety of colleagues and occupants of the Federal building.  I-3 AF, Tab 12 at 23.  He noted the appellant's disciplinary history, including a letter of reprimand for having attempted to bring a magazine clip containing ammunition into the ECFB, and a 10-day suspension for his disregard of COVID-19 precautions.  I-3 AF, Tab 11 at 11-13, 19-22, Tab 12 at 23.  He concluded that, based on such, he found no potential for the appellant's rehabilitation and that removal was warranted.  I-3 AF, Tab 12 at 23.  The appellant's Board appeal followed, and the administrative judge issued an initial decision in November 2022 sustaining the appellant's removal.  I-3 AF, Tab 39, Initial Decision (ID).

¶3        The sole issue raised by the appellant in his petition for review concerns his claim of a due process violation based on an ex parte communication.  Petition for Review (PFR) File, Tab 5 at 5.  On August 7, 2020, following the agency's

---

process violation discussed herein, the appellant does not challenge the administrative judge's findings regarding his affirmative defenses.  Petition for Review File, Tab 5. Therefore, we see no reason to reexamine those claims, and we conclude that the appellant failed to prove them.

notice of proposed removal and placement of the appellant on administrative leave but prior to the removal decision, the U.S. Marshals Service issued an Alert Notice pertaining to the appellant. I-3 AF, Tab 11 at 8, Tab 12 at 470-74, Tab 31 at 40. The Alert Notice provided instructions for employees and visitors to immediately contact the U.S. Marshals Service for the Northern District of Texas if the appellant was seen in the courthouse, along with detailed information and a photograph of the appellant. I-3 AF, Tab 31 at 40. It set forth as "reason for caution" that the appellant was a "Civil Litigant who was fired on [July 30, 2020] from the Executive Office of Immigration Review (Earl Cabell Federal Building) after several disciplinary actions, including anti-social behavior related to spreading COVID-19 and attempting to bring ammunition into the Federal Building." *Id.* It further stated that the appellant "appeared to suffer from mental health issues including paranoia" and that the U.S. Marshals Service was concerned that he might attempt to contact a U.S. District Judge. *Id.*

¶4 Notably, the U.S. District Court for the Northern District of Texas is also housed in the ECFB, upstairs from the Dallas Immigration Court. Hearing Transcript – October 17, 2022 (HT-1) at 222 (testimony of the proposing official); Hearing Transcript – October 18, 2022 (HT-2) at 18 (testimony of the current FPS Inspector). On August 10, 2020, a Judicial Security Inspector with the U.S. Marshals Service delivered the Alert Notice to the Dallas Immigration Court via the proposing official and requested that she post it by its reception window.[3] I-3 AF, Tab 31 at 37. The Inspector explained that the Alert Notice was issued upon the instruction of a U.S. District Judge who had dismissed a civil lawsuit that the appellant had filed against the EOIR and had concerns regarding his mental health. *Id.* The proposing official sent an email to the Assistant Chief Immigration Judge, who was also the deciding official on the appellant's disciplinary action, relaying her conversation with the Inspector and attaching a copy of the Alert Notice. *Id.* The deciding official then forwarded the proposing

---

[3] The proposing official did not follow these instructions. I-3 AF, Tab 31 at 37.

official's email to his supervisors and general counsel's office. *Id.* at 36; HT-1 at 89, 98 (testimony of the deciding official). The deciding official also emailed the U.S. Marshals Service Inspector to inform him that the appellant had not been fired on July 30, 2020, as the Alert Notice had incorrectly stated. I-3 AF, Tab 31 at 39. The parties do not dispute that the agency did not provide the appellant with notice of the issuance of the Alert Notice or the proposing official's email to the deciding official prior to the September 10, 2020 removal decision. PFR File, Tab 5 at 5, Tab 7 at 7.

¶5 In the initial decision, the administrative judge found that the Alert Notice issued by the U.S. Marshals Service was a constitutionally permissible ex parte communication. ID at 25-27. She reasoned that the deciding official testified credibly and compellingly that he did not consider it in his decision to remove the appellant because, as it was not part of the information provided in that context, he understood that he was not allowed to. *Id.* She further found that the Alert Notice was "unlikely to be particularly disquieting" under the circumstances of this case. *Id.*

## DISCUSSION OF ARGUMENTS ON REVIEW

¶6 In his petition for review, the appellant argues that the administrative judge improperly applied the law regarding due process violations. PFR File, Tab 5 at 4. He argues that the communication concerning the Alert Notice contained new and material information and was thus constitutionally impermissible. *Id.* at 5.

¶7 In response to the appellant's arguments on review, the agency agrees that the Alert Notice contained new information. PFR File, Tab 7 at 8-9. However, it argues that the information was not material for two reasons: first, the deciding official testified that he did not consider it, and the administrative judge's crediting of that testimony is entitled to deference; and second, the Alert Notice did not create undue pressure upon the deciding official because the facts and

factors noticed to the appellant in the notice of proposed removal were sufficient to support his removal. *Id.* at 8-10. The agency cautions that, if the Board were to agree with the appellant, it would open the door for any ex parte communication—regardless of materiality or whether the deciding official considered the information—to be a basis for reversal of an agency's adverse action. *Id.* at 10.

¶8 The U.S. Court of Appeals for the Federal Circuit has rejected similar arguments by agencies in *Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368 (Fed. Cir. 1999) and its progeny. *Stone*, 179 F.3d at 1373, 1376-77. Our decision that the ex parte communications in this case violated due process guarantees does not expand this existing precedent. In *Stone*, the Federal Circuit held that "[t]he introduction of new and material information by means of ex parte communications to the deciding official undermines the public employee's constitutional due process guarantee of notice (both of the charges and of the employer's evidence) and the opportunity to respond." *Id.* at 1376. *Stone* provided a three-factor test to assess whether a particular ex parte communication violates due process: (1) "whether the ex parte communication merely introduces 'cumulative' information or new information"; (2) "whether the employee knew of the error and had a chance to respond to it"; and (3) "whether the ex parte communications were of the type likely to result in undue pressure upon the deciding official to rule in a particular manner." *Boss v. Department of Homeland Security*, 908 F.3d 1278, 1281 (Fed. Cir. 2018) (quoting *Stone*, 179 F.3d at 1377). The inquiry is "whether the ex parte communication is so substantial and so likely to cause prejudice that no employee can fairly be required to be subjected to a deprivation of property under such circumstances." *Hornseth v. Department of the Navy*, 916 F.3d 1369, 1375 (Fed. Cir. 2019) (quoting *Stone*, 179 F.3d at 1376-77).

¶9 In *Ward v. U.S. Postal Service*, 634 F.3d 1274 (Fed. Cir. 2011), the Federal Circuit held that there is no constitutionally relevant distinction between ex parte

communications relating to the underlying charge and those relating to the penalty. *Ward*, 634 F.3d at 1280. It held that if the Board finds that the ex parte communications introduced new and material information under the factors set forth in *Stone*, the employee must be afforded a constitutionally correct removal procedure. *Id.* Furthermore, the Federal Circuit has made clear that the test under *Stone*, while requiring consideration of the facts and circumstances of each case, is "an objective one." *Rueter v. Department of Commerce*, 63 F.4th 1357, 1365 (Fed. Cir. 2023); *Hornseth*, 916 F.3d at 1375. Particularly, regarding its third factor, *Stone* directs the inquiry as to the "type of communication" involved and whether that type is "likely" to cause prejudice. *Stone*, 179 F.3d at 1377. It does not require that the ex parte communication actually resulted in undue pressure upon the deciding official. *See Johnson v. Department of the Air Force*, 50 F.4th 110, 116 (Fed. Cir. 2022) (stating that "a deciding officer may violate an employee's due process rights even if the deciding officer states that he 'would have concluded that the employee should be removed whether or not he had received the ex parte communications'") (citing *Ward*, 634 F.3d at 1280). Thus, we conclude that the credible testimony of a deciding official establishing the absence of subjective influence does not preclude a due process violation. *See id.*

¶10    Accordingly, we find that the administrative judge erred by assigning significant weight to the deciding official's testimony that he did not consider the ex parte information. ID at 25-27. We will consider the facts and circumstances of this case under the objective test set forth in *Stone*.

¶11    It is apparent, and the parties do not dispute, that the email containing the Alert Notice issued by the U.S. Marshals Service introduced new information to the deciding official. I-3 AF, Tab 31 at 36-41; PFR File, Tab 5 at 5, Tab 7 at 7-8. The parties also do not appear to dispute that the appellant, who was on administrative leave at the time of the issuance of the Alert Notice, was not aware of the ex parte communication and did not have a chance to respond to it. PFR

File, Tab 5 at 5, Tab 7 at 7-8; HT-2 at 70-73 (testimony of the appellant). Thus, we find that the first two *Stone* factors weigh in favor of a due process violation.

¶12 We find that the third *Stone* factor also weighs in favor of concluding that the ex parte communications introduced new and material information and thus violated due process. *See Ward*, 634 F.2d at 1279-80; *Stone*, 179 F.3d at 1377. The administrative judge reasoned that the Alert Notice was unlikely to be particularly disquieting because the only new information it contained was that the appellant appeared to suffer from mental health issues including paranoia and that a U.S. District Judge was concerned that he may attempt to contact her. ID at 27; I-3 AF, Tab 31 at 40. She explained that the Alert Notice described the appellant's prior misconduct, for which he had been previously disciplined, rather than any new behavior. ID at 27.

¶13 We disagree with this reasoning. First, it fails to recognize the additional information concerning the Alert Notice from the Judicial Security Inspector with the U.S. Marshals Service. I-3 AF, Tab 31 at 37. The deciding official was informed that a U.S. District Judge, a few days earlier, had dismissed a civil lawsuit filed by the appellant against the agency. *Id.* The U.S. District Judge had instructed that the alert be issued because she had concerns regarding his mental health. *Id.* Thus, we can reasonably surmise that the appellant exhibited some type of disconcerting behavior or made some disconcerting statements in connection with his district court case. *Id.* The deciding official was also informed of the Inspector's recommendation that the Dallas Immigration Court, located downstairs from the district courthouse, post the Alert Notice in its reception window. *Id.* at 37.

¶14 This new information is of the type likely to result in undue pressure upon the deciding official. As the appellant highlights on review, the ex parte information invokes the same major concerns expressly considered by the deciding official in his penalty analysis. PFR File, Tab 5 at 7-14. The deciding official stated in the decision letter that the misconduct set forth in the proposal

notice presented an increasingly disturbing pattern and diverted the attention of security officials responsible for protecting the Federal building and its employees and visitors.  I-3 AF, Tab 12 at 23.  He testified at the hearing that he was embarrassed by the appellant's inappropriate behavior during a meeting with a FPS Inspector, i.e., the misconduct underlying the agency's inappropriate conduct charge, because it put the agency in an unfavorable light.  HT-1 at 24.  Undoubtedly, this new information—that the appellant's disconcerting behavior has now drawn the attention of a U.S. District Judge and the U.S. Marshals Service—is highly relevant to the same penalty factors considered to be particularly aggravating in this case.

¶15      Furthermore, the Alert Notice is of the type likely to be particularly influential under the circumstances of this case, in which the district courthouse is housed in the same Federal building (the ECFB) as the appellant's work location.  The situation creates obvious implications for the agency pertaining to the appellant's continued employment.  The Alert Notice broadcasts to employees and visitors that the appellant demonstrated anti-social behavior related to spreading COVID-19, attempted to bring ammunition into the Federal Building, and exhibits paranoia.  I-3 AF, Tab 31 at 40.  It instructs all employees and visitors of the courthouse to contact the U.S. Marshals Service if they see the appellant in the courthouse, and it states that he must be "closely monitored in courts spaces."  *Id.*  The FPS Inspector currently assigned to the ECFB testified that, even though this Alert Notice does not expressly prohibit the appellant from entering the ECFB, he exchanges information with the U.S. Marshals Service daily and would take its Alert Notices seriously.  HT-2 at 32-36.  Furthermore, the deciding official testified that he was not at liberty to ignore the Alert Notice, and the fact that he sent it to his general counsel's office and his supervisor demonstrates its import.[4]  HT-1 at 89-91, 98; I-3 AF, Tab 31 at 36.  Thus, we find

---

[4] The deciding official testified that he did not consider whether he had the ability to bring the appellant back to work notwithstanding the Alert Notice, because the appellant was already on administrative leave, and he had determined based on the

that the Alert Notice is the type of information likely to influence a decision about whether to remove the appellant or, alternatively, institute some lesser penalty that might require the appellant's return to the workplace.

¶16    Based upon the above, we conclude that the ex parte communication was so substantial and so likely to cause prejudice that it rose to the level of a due process violation. In making this finding, we reject the agency's argument that the ex parte communications were permissible because the facts and factors in the notice of proposed removal issued to the appellant were sufficient to support his removal. PFR File, Tab 7 at 10. The Federal Circuit has clearly established that a due process violation is not subject to the harmless error test. *See Ward*, 634 F.3d at 1280; *see also Johnson*, 50 F.4th at 115-16; *Boss*, 908 F.3d at 1282. The prohibition on applying the harmless error test is directed to foreclosing the argument that an employee would have been removed from his position on the merits even without the procedural defect in his firing. *Boss*, 908 F.3d at 1282. Thus, per the Federal Circuit's instruction, we will not "fall into [the] trap" of analyzing whether the appellant would have been removed even without the ex parte information. *Id.*

¶17    Accordingly, we find that the administrative judge erred in finding no violation of the appellant's right to due process. We, therefore, reverse the initial decision sustaining the appellant's removal.

## ORDER

¶18    We ORDER the agency to cancel the appellant's removal and restore the appellant effective September 10, 2020. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

---

charged misconduct that no alternative penalties were appropriate. HT-1 at 93-94 (testimony of the deciding official). We note again that "a deciding official may violate an employee's due process rights even if he states that 'he would have concluded that the employee should be removed whether or not he had received the ex parte communications.'" *Johnson*, 50 F.4th at 116 (quoting *Ward*, 634 F.3d at 1280).

¶19    We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision.  We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order.  If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶20    We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order.  The appellant, if not notified, should ask the agency about its progress.  *See* 5 C.F.R. § 1201.181(b).

¶21    No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order.  The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency.  5 C.F.R. § 1201.182(a).

¶22    For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached.  The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

## NOTICE TO THE APPELLANT REGARDING
## YOUR RIGHT TO REQUEST
## ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set forth at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203.  If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

## NOTICE OF APPEAL RIGHTS[5]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case.  If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

---

[5] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

**(1) <u>Judicial review in general</u>**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) <u>Judicial or EEOC review of cases involving a claim of discrimination</u>**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you</u>

<u>receive</u> this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[6]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

---

[6] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction.  The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

*Gina K. Grippando*

FOR THE BOARD: _____

Gina K. Grippando
Clerk of the Board

Washington, D.C.



**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805. Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete. Missing documentation may substantially delay the processing of a back pay award. **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE: Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket. Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled). **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 5) Certified timecards/corrected timecards. **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐ 7) Outside earnings documentation. Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc. Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:** When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received. The payroll office must collect the debt from the back pay award. The annual leave will be restored to the employee. Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a. Employee name and social security number.
   b. Detailed explanation of request.
   c. Valid agency accounting.
   d. Authorized signature (Table 63).
   e. If interest is to be included.
   f. Check mailing address.
   g. Indicate if case is prior to conversion.  Computations must be attached.
   h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a. Must provide same data as in 2, a-g above.
   b. Prior to conversion computation must be provided.
   c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.