NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-3185

STEPHEN R. WEEKES,

Petitioner,

v.

DEPARTMENT OF HOMELAND SECURITY,

Respondent.

Stephen R. Weekes, of Brooklyn, New York, pro se.

Jacob A. Schunk, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Bryant G. Snee, Deputy Director.

Appealed from: Merit Systems Protection Board

NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-3185

STEPHEN R. WEEKES,

Petitioner,

v.

DEPARTMENT OF HOMELAND SECURITY,

Respondent.

Petition for review of the Merit Systems Protection Board in NY0752080266-I-1.

_____

DECIDED:  November 10, 2009

_____

Before MAYER, PROST, and MOORE, Circuit Judges.

PER CURIAM.

Petitioner Stephen R. Weekes appeals a decision of the Merit Systems Protection Board ("Board") affirming the decision to remove him from his position as an Officer with U.S. Customs and Border Protection ("CBP"), a component of the Department of Homeland Security.  For the reasons that follow, we affirm.

## BACKGROUND

Mr. Weekes began his employment with the federal government in 1990 as an Immigration Inspector, and was reclassified as a CBP Officer beginning in March of 2003.  In November of 2007, the agency's disciplinary review board notified Mr. Weekes of his proposed removal based on four charges, three of which were ultimately

sustained by the agency's "deciding official" in approving his removal: lack of candor, conduct unbecoming a CBP Officer, and failure to report a removable alien. Over Mr. Weekes's protest, his removal went into effect on May 23, 2008. He appealed to the Board. The Board did not sustain the "lack of candor" or "failure to report" charges. It did, however, sustain the "conduct unbecoming" charge based on two of the four specifications provided by the agency.

The first sustained specification described Mr. Weekes's behavior during an April 2007 interview with special agents from CBP's Office of Internal Affairs. The agents were interviewing Mr. Weekes about an incident that took place between Mr. Weekes and a Mr. Knowles during a union meeting, in which Mr. Weekes either purposefully "swatted/cuffed" or "inadvertent[ly]" touched the back of Mr. Knowles's head. Mr. Weekes admitted before the Board that during the interview, he told the special agents that "they were like FBI rejects and whining little girls" and that "they were like two clowns."

The second sustained specification described another interview between Mr. Weekes and the CBP special agents, which took place on June 12, 2007. Apparently, the bulk of the interview went well, but at the end of the meeting the agents brought up the fact that the next day they planned to interview Mr. Weekes regarding his alleged failure to report a removable alien—his brother, who was convicted of possessing a controlled substance. Mr. Weekes admitted that he asked what would happen if he did not show up for the interview, put his feet up on a table, crossed his arms, and said that if he was asked questions he would just respond "nope, nope, nope." He also stated

that at the end of the interview, when he thought he was not going to receive a copy of his statement, he reached out and took it from one of the agents.

The Board sustained the "conduct unbecoming" charge based on these two specifications. With regard to the first, the Board found that Mr. Weekes "behaved unprofessionally toward the agents. . . . he uttered the phrase 'FBI rejects' and compared them to little girls and clowns. . . . [Mr. Weekes] was the subject of an investigation and was expected to be cooperative and respectful." As to the second, the Board noted that Mr. Weekes "behaved unprofessionally when discussing the subject matter of the next day's interview and in taking the statement away from [the special agent]. . . . [he] had options other than to forcefully take the statement."

Mr. Weekes now appeals to this court. We have jurisdiction to hear this case under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

We must affirm the Board's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); see Parrott v. Merit Sys. Prot. Bd., 519 F.3d 1328, 1334 (Fed. Cir. 2008).

Mr. Weekes makes a number of arguments in support of his claim that we should reverse the Board. First, he states that some witnesses lied in their reports and affidavits, in effect challenging the Board's credibility determinations. As a preliminary matter, we note that "an evaluation of witness credibility is within the discretion of the Board and . . . such evaluations are virtually unreviewable on appeal." King v. Dep't of Health & Human Servs., 133 F.3d 1450, 1453 (Fed. Cir. 1998) (internal quotation marks

omitted).  Further, the administrative judge issuing the Board's initial decision carefully examined each and every charge before her and, as required by the burden of proof, gave Mr. Weekes the benefit of the doubt.  For instance, she did not sustain the "lack of candor" charge based on Mr. Weekes's statements about the altercation with Mr. Knowles because Mr. Knowles did not testify and the administrative judge "did not have an opportunity to assess his credibility."  Most importantly, the Board sustained the specifications against Mr. Weekes based on his own admissions, not based on statements by the special agents or other third parties.  Thus, any credibility determinations the administrative judge made have no bearing on the Board's decision.

Mr. Weekes also argues that the affidavits relied upon by the Board are impermissible hearsay evidence.  "It has long been settled, however, that hearsay evidence may be used in Board proceedings and may be accepted as preponderant evidence even without corroboration if, to a reasonable mind, the circumstances are such as to lend it credence."  Kewley v. Dep't of Health & Human Servs., 153 F.3d 1357, 1364 (Fed. Cir. 1998).  In addition, as we just pointed out, the specifications were sustained based on Mr. Weekes's admissions; thus, third-party hearsay evidence played no part in supporting the charge.

Next, Mr. Weekes claims he was denied representation at the interviews in violation of the rule announced in NLRB. v. J. Weingarten, Inc., 420 U.S. 251 (1975). The record does not support his claim.  The Board found that at the April 2007 interview, Mr. Weekes in fact appeared with his counsel, Ms. Snyder.  Although Ms. Snyder was asked to leave the room by one of the special agents, she was ultimately permitted back into the interview room while Mr. Weekes wrote out answers to the

agents' questions. Likewise, during the June 12, 2007 interview Mr. Weekes was accompanied by an attorney named Mr. Brown. To the extent that Mr. Weekes is claiming he did not have counsel, he has offered no evidence to support that claim. To the extent that Mr. Weekes feels that any challenge to his representatives somehow violated his rights by effectively depriving him of counsel, the Supreme Court has made it clear that an employer does not have to permit a union representative at an interview; this leaves "the employee the choice between having an interview unaccompanied by his representative, or having no interview and forgoing any benefits that might be derived from one." Weingarten, 420 U.S. at 258. Mr. Weekes chose to stay at the interview and answer questions in the presence of his attorney; no right was violated.

Mr. Weekes also claims that his speech should be protected because he was acting "as his own representative." As explained above, however, Mr. Weekes was not acting as his own representative—in fact, he was represented at both interviews. Nor can that designation excuse the behavior at issue here. See, e.g., Webster v. Dep't of the Army, 911 F.2d 679, 688 (Fed. Cir. 1990) (upholding removal of employee based on "discourteous" behavior and citing with approval Roberson v. Veterans Admin., 27 M.S.P.R. 489, 494 (1985) for the notion that "abusive language and disrespectful behavior can constitute just cause for removal"). The citation provided by Mr. Weekes is not to the contrary. See Dep't of the Air Force, Grissom Air Force Base, 51 F.L.R.A. 7 (1995) (noting that in some cases a union representative may "use 'intemperate, abusive, or insulting language without fear of restraint or penalty' if he or she believes such rhetoric to be an effective means to make the union's point" but that the conduct may become so "outrageous and insubordinate" that it constitutes flagrant misconduct).

Mr. Weekes further argues that his behavior took place (1) while he was acting in his capacity as a union official, not in his capacity as a CBP Officer; (2) while he was on annual leave; and (3) in the case of the July 2007 interview, at least in part after the interview was over. As long as the agency can prove that the removal of Mr. Weekes promoted the efficiency of the service, however, nothing prevents the agency from relying upon off-duty behavior. See, e.g., Brown v. Dep't of the Navy, 229 F.3d 1356, 1361 (Fed. Cir. 2000); Allred v. Dep't of Health & Human Servs., 786 F.2d 1128, 1130 (Fed. Cir. 1986). The Board explicitly found that the agency satisfied its burden of proving that Mr. Weekes's removal would promote the efficiency of the service, as his behavior "raises serious questions about his judgment and his ability to exercise self-discipline." We are also unconvinced by Mr. Weekes's apparent argument that once the interview is technically over, an employee is free to behave unprofessionally toward those that just conducted the interview.

Mr. Weekes also claims that the Board held him to an impermissibly high standard when it noted that "[l]aw enforcement officers are held to a higher standard of conduct." Regardless of whether Mr. Weekes's position is technically classified as a "law enforcement officer" by CBP, however, the Board has repeatedly held that "[p]ositions not classified as law enforcement positions, but which are analogous, for example, security officers, may be held to a higher standard of conduct as well." Padilla v. Dep't of Justice, 64 M.S.P.R. 416, 423 (1994); see Jones v. Dep't of the Army, 52 M.S.P.R. 501, 506-07 (1992).

Finally, Mr. Weekes challenges harshness of his penalty, claiming that the Board failed to consider any mitigating factors. As the Board noted, however, Mr. Weekes

received four prior disciplinary actions during his eighteen years of federal service (three of which related to disrespectful and disruptive language or behavior), and while the Board considered the fact that he had not had any disciplinary action in the recent past, "his statements and actions on April 10, 2007 and June 12, 2007 reflected a continuation of disrespectful behavior." The Board also specifically mentioned that Mr. Weekes did not apologize for his behavior. We agree with the Board that the relevant Douglas factors were considered and Mr. Weekes's removal is within the limits of reasonableness. See Malloy v. U.S. Postal Serv., 578 F.3d 1351, 1357 (Fed. Cir. 2009); Douglas v. Veterans Admin., 5 M.S.P.R. 280, 306 (1981).

The Board's decision to affirm the agency's specifications and proposed removal action is supported by substantial evidence and is not arbitrary, capricious, or an abuse of discretion. To the extent that Mr. Weekes makes other arguments, we find them to be without merit.

## CONCLUSION

For the reasons stated above, we affirm.

## COSTS

Each party shall bear its own costs.