NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**RODNEY RAY,**
*Petitioner*

**v.**

**UNITED STATES MINT, DENVER, COLORADO,**
*Respondent*

---

2025-1631

---

Petition for review of an arbitrator's decision in No. FMCS 240802-08698 by Jeff J. Minckler.

---

Decided:  January 13, 2026

---

RODNEY RAY, Aurora, CO, pro se.

TATE NATHAN WALKER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.  Also represented by ELIZABETH MARIE HOSFORD, PATRICIA M. MCCARTHY, BRETT SHUMATE.

---

Before LOURIE, BRYSON, and REYNA, *Circuit Judges*.

PER CURIAM.

Pro se petitioner Rodney Ray asks us to review an arbitration decision finding his removal from the United States Mint did not violate the Mint's collective bargaining agreement with the local union. For the reasons discussed herein, we affirm the arbitrator's decision.

## BACKGROUND

Mr. Ray was a longtime employee of the United States Mint in Denver, Colorado ("Mint") and served as president of the local chapter of the American Federation of Government Employees ("Union"). His wife also worked at the Mint on the third shift. On January 25, 2024, Mary Wurster, Human Resources Officer for the Mint, issued Mr. Ray's wife a letter informing her she must undergo a "fitness-for-duty" examination. A "fitness-for-duty" examination entails a medical assessment of an employee's ability to perform job duties, and failure to meet the necessary physical requirements can result in removal.

As part of his Union president duties, Mr. Ray attended weekly labor-management meetings. He attended one such meeting on January 31, 2024, along with several members of management and Ms. Wurster. Near the end of the meeting, Mr. Ray made some statements, the exact phrasing of which are disputed. Mr. Ray contends he stated that "if people do not stop messing around someone is going to get killed" and that "all bets are off" and "[I'm] putting management on notice." Appx113; Informal Br. 14.[1] The Mint, harmonizing statements from the other meeting attendees, contends Mr. Ray stated something identical or similar to the following: "If anyone messes with my wife, I will kill them" and "I'm only doing what any

---

[1]    "Appx" refers to the appendix accompanying Respondent's Informal Brief, which is docketed at ECF No. 26. "Informal Br." refers to Mr. Ray's Informal Brief docketed at ECF No. 29.

husband would do to protect his wife. You all are on notice." Appx35.

The context of Mr. Ray's statements is also disputed. Mr. Ray claims he was referring to his wife potentially being harmed by other third-shift employees. He believed his wife was being targeted by other third-shift employees for lodging a complaint with management, and that those employees had placed nails in her car tires and tampered with her brakes. Certain other meeting attendees, however, felt directly threatened by Mr. Ray's statements. Ms. Wurster felt Mr. Ray was referencing the "fitness-for-duty" letter she issued Mr. Ray's wife the week prior.

Mr. Ray was placed on administrative leave the following day and Mint Police were brought in to investigate the incident. On May 8, 2024, the Mint issued a notice of proposed removal charging Mr. Ray with making statements that disrupted the workplace. On June 12, 2024, the Mint sustained the charge and removed Mr. Ray. On June 22, 2024, Mr. Ray appealed his removal through the negotiated grievance procedure set forth in the Mint's collective bargaining agreement ("CBA") with the Union. Mr. Ray argued the Mint had improperly removed him for making statements that were protected by his role as Union president. The Mint denied the grievance and Mr. Ray invoked arbitration under the CBA. The arbitrator held an evidentiary hearing on January 22, 2025, and issued a binding arbitration decision on March 5, 2025. The arbitrator denied the grievance, finding the Mint did not violate the CBA and that Mr. Ray was removed for just and sufficient cause. Mr. Ray appealed to this court. We have jurisdiction under 5 U.S.C. § 7121(f).

## STANDARD OF REVIEW

We review the arbitrator's decision using the same standard of review that applies to appeals from decisions of the Merit Systems Protection Board. 5 U.S.C. § 7121(f). Thus, this Court must affirm the arbitrator's decision

unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). We review the arbitrator's legal determinations de novo. *Welshans v. U.S. Postal Serv.*, 550 F.3d 1100, 1102 (Fed. Cir. 2008). We review underlying findings of fact for substantial evidence. *Parrott v. Merit Sys. Prot. Bd.*, 519 F.3d 1328, 1334 (Fed. Cir. 2008).

## DISCUSSION

Mr. Ray argues the arbitrator erred in denying his grievance for several reasons. As we discuss below, none are persuasive, and we affirm the arbitrator's decision.

First, Mr. Ray argues the arbitrator erred by siding with Ms. Wurster's and other meeting attendees' more nefarious version of his statements. Informal Br. 8–9, 13–14. The arbitrator weighed Mr. Ray's account of his statements against those of the other meeting attendees and found it was more likely than not that Mr. Ray made threatening statements. Appx8–11. The arbitrator found that the "number of credible witnesses who stated and later testified the Employer's version is the more accurate outnumber the single supporter of Ray's version – Ray himself." Appx9. We find substantial evidence supports the arbitrator's determination.

Mr. Ray calls into question Ms. Wurster's credibility because she had a relationship with the police chief of the Mint Police. Informal Br. 17. The arbitrator considered this relationship, finding Ms. Wurster nonetheless credible because there was "no nexus" between that relationship and her statement or testimony. Appx11. Such credibility determinations are "virtually unreviewable." *See Hambsch v. Dep't of the Treasury*, 796 F.2d 430, 436 (Fed. Cir.

1986)).[2] We see no reason to disturb the arbitrator's credibility assessment.

Mr. Ray also argues that Ms. Wurster's statement was made in retaliation to complaints he and his wife made to Ms. Wurster about issues on third shift. Informal Br. 13. The arbitrator considered Mr. Ray's statement to that effect and found there was "no credible claim or testimony alleging the witnesses supporting the Employer's version had any ulterior motive in their claim Ray's statements were threatening." Appx9, 115. And even if Mr. Ray had credibly raised such a claim, the arbitrator based his finding that Mr. Ray made threatening statements on statements and testimony of meeting attendees other than Ms. Wurster. Appx8–9. This is substantial evidence to uphold the arbitrator's decision.

Second, Mr. Ray argues that any reference to the "fitness-for-duty" letter should have been excluded from evidence because the events giving rise to his removal were entirely unrelated to that letter. Informal Br. 9–10. Evidentiary issues are at the "sound discretion" of the arbitrator. *See Curtin v. OPM*, 846 F.2d 1373, 1378 (Fed. Cir. 1988). And it is incumbent upon Mr. Ray to show that any abuse of discretion on such matters caused "substantial harm or prejudice to his rights which could have affected the outcome of the case." *Id.* at 1379. Here, Mr. Ray does not establish an abuse of discretion or argue admission of

---

[2] We apply MSPB case law to appeals of arbitration decisions like the decision at issue here. 5 U.S.C. § 7121(f) ("[J]udicial review shall apply to the award of an arbitrator in the same manner and *under the same conditions as if the matter had been decided by the Board*.") (emphasis added). We do not review MSPB credibility determinations, like the determination here, that are not "inherently improbable or discredited by undisputed fact." *Stevens v. Dep't of Air Force*, 395 F. App'x 679, 682 (Fed. Cir. 2010).

the letter could have affected the outcome of his grievance. Further, the letter was plainly relevant as Ms. Wurster's statement indicated she felt threatened by Mr. Ray's statements made in her presence after his wife received the letter. Appx79. We find no abuse of discretion in the arbitrator's admission of the letter.

Third, Mr. Ray argues the arbitrator exceeded his authority by failing to implement progressive discipline as mandated by the CBA. Informal Br. 4–5. We disagree that the arbitrator exceeded his authority. The relevant provision of the CBA, Article 31(1), provides that removals "will be taken only for just and sufficient cause." Appx128. Applying that standard, the arbitrator found that the Mint chose removal because Mr. Ray's statements "were a real threat which disrupted the workplace," "negatively impacted the efficiency of governmental operations," and "created fear and motivation for some to leave the workplace." Appx13. The arbitrator further expounded that removal is appropriate because Mr. Ray's continued employment would be accompanied by an "unacceptable level [of] risk he might act on his threats." *Id.*

The arbitrator also considered whether removal is the appropriate penalty by analyzing the *Douglas* factors. *Id.* at 13–16 (citing *Douglas v. Veterans Admin.*, 5 MSPR 280 (1981)). In so reviewing, the arbitrator took into account Mr. Ray's longevity and clean disciplinary record but found that other factors outweighed those considerations. Mr. Ray argues that the arbitrator failed to properly consider comparative discipline cases with the *Douglas* factor analysis, namely cases Mr. Ray provided involving interactions between police officers. Informal Br. 19. The arbitrator explained that adverse action comparisons consider, *inter alia*, whether employees "worked in separate chains of command" and "had different responsibilities." Appx14–15. The arbitrator determined the cases cited by Mr. Ray did not involve "similarly situated" employees acting "under similar circumstances." *Id.* at 15. Thus, the

arbitrator considered Mr. Ray's cited cases and determined they were not factually relevant.  For that reason, Mr. Ray's argument concerning the *Douglas* factors fails.

Fourth, Mr. Ray argues his removal violated his protected rights in his capacity as Union president.  Informal Br. 8.  In some cases, a union representative may use "intemperate, abusive, or insulting language without fear of restraint" when acting on behalf of the union.  *Dep't of the Air Force, Grissom Air Force Base*, 51 F.L.R.A. 7 (1995).  Here, however, the arbitrator found Mr. Ray's statements indicated he "was acting as a husband protecting his wife, rather than a union official concerned for the good of his members as a whole."  Appx12.  The arbitrator also went a step further to find that, even if Mr. Ray had been acting in his capacity as Union president, his statements were so outrageous that they constituted unprotected "flagrant misconduct."  Appx11, 17.  This court has held the same under less egregious circumstances.  *Weekes v. Dep't of Homeland Security*, 351 F. App'x 442, 443–45 (Fed. Cir. 2009) (declining to find merely insulting, but not threatening, statements to be protected).  Thus, the arbitrator's finding that Mr. Ray was not acting in his Union president capacity, or alternatively that his statements were not protected by such capacity, is supported by substantial evidence.  For this reason, Mr. Ray's argument that his removal violated his protected rights as Union president fails.

## CONCLUSION

We have considered Mr. Ray's remaining arguments and find them unpersuasive.  For the foregoing reasons, we affirm.

## AFFIRMED

### COSTS

No costs.